J. A11029/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

ROBERT A. RYAN,                          :        IN THE SUPERIOR COURT OF
                                         :              PENNSYLVANIA
                    Appellant            :
                                         :
               v.                        :        No. 1249 WDA 2013
                                         :
PATRICIA A. RYAN                         :


Appeal from the Order Entered July 2, 2013,
in the Court of Common Pleas of Fayette County
Civil Division at No. 2797 of 2009, G.D.


BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND OLSON, J.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED OCTOBER 14, 2014**

Robert A. Ryan ("Husband") appeals from the July 2, 2013 order of the Court of Common Pleas of Fayette County which adjudicated the parties' economic issues in a bifurcated divorce proceeding.  We affirm.

The pertinent factual and procedural history of the case as taken from the certified record follows.  Husband and Patricia A. Ryan ("Wife") were married on April 17, 2004.  The marriage was the second for Husband and the fourth for Wife.  The parties do not have any children together. Husband, a high school graduate, had been working as a carpet installer for 23 to 25 years at the time of the marriage.  At the time of equitable distribution hearings in 2011, Husband was receiving workers' compensation.  At the time of the marriage, Wife was working at

Ruby Memorial Hospital while attending LPN school to obtain her RN which she attained in 2005.

The parties separated in September of 2009. Husband filed a complaint in divorce on October 6, 2009, including counts for alimony and equitable distribution of marital property. Wife filed an answer. Amber N. Shipley, Esq., was appointed special master; and hearings took place on July 8, 2011, July 27, 2011, and August 8, 2011. Attorney Shipley filed her report on March 14, 2012, recommending a 60/40 division of the marital assets in favor of Wife. Husband filed exceptions, and oral argument occurred on May 29, 2012, before the Honorable Ralph C. Warman. On January 7, 2013, the trial court bifurcated the divorce action. On March 8, 2013, the trial court granted the parties a divorce under Section 3301(d) of the Divorce Code. On July 2, 2013, the trial court entered an order denying Husband's exceptions and affirming the report of the special master regarding the parties' economic issues. This appeal followed.

Husband raises the following issues for our review:

> I. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION BY FAILING TO CONSIDER ALL OF THE PARTIES' ASSETS IN ITS EQUITABLE DISTRIBUTION AWARD, FAILING TO PROPERLY IDENTIFY AND VALUE CERTAIN ASSETS, AND FAILING TO APPROPRIATELY ATTRIBUTE CERTAIN ASSETS TO THE RESPECTIVE PARTY SUCH THAT WIFE WAS AWARDED 60% OF THE MARITAL ESTATE AND HUSBAND ONLY 40%.
>
> A. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN

FINDING THAT WIFE DID MORE TO PRESERVE MARITAL ASSETS THAN HUSBAND?

B. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN NOT CREDITING HUSBAND WITH PAYMENTS ON THE 2007 DODGE NITRO AND FAILING TO CREDIT HUSBAND WITH THE BALANCE DUE ON SAID NITRO AT THE TIME OF DISTRIBUTION[?]

C. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN NOT INCLUDING CERTIFICATE OF DEPOSIT IN THE AMOUNT OF $15,000.00 AS A MARITAL ASSET?

II. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN DETERMINING THAT THE DEBT INCURRED BY WIFE COMMENCING SEPTEMBER 30, 2009 UNTIL OCTOBER 14, 2009 WAS MARITAL DEBT SINCE THE SAME WAS INCURRED FOLLOWING THE DATE OF SEPARATION BY WIFE ONLY WITHOUT HUSBAND'S KNOWLEDGE?

III. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN GIVING WIFE CREDIT FOR APPROXIMATELY $12,540.24 REP[R]ESENTING WORKER'S COMPENSATION ANNUITY MONTHLY PAYMENTS MADE TO HUSBAND AND COUNTED AS INCOME IN DETERMINATION OF WIFE'S OBLIGATION TO SUPPORT HUSBAND IN CONTRAVENTION OF THE COURT'S ORDER OF JULY 15, 201[1]?

IV. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN NOT AWARDING ALIMONY AND EXPENSES TO HUSBAND?

V. DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN NOT SETTING FORTH

> HUSBAND'S NON-MARITAL PROPERTY ON
> EXHIBIT 12 AND MAKING PROVISION FOR HIM
> TO OBTAIN THE SAME?

Husband's brief at 5-6. Husband's sub-issues I(B) and I(C) were not addressed in his brief. Therefore, we consider them abandoned.

Husband's first three claims of error relate to the trial court's equitable distribution order. Our standard of review of a trial court's equitable distribution award is well settled: "The trial court has broad discretion in fashioning [equitable distribution] awards, and we will overturn an award only for an abuse of that discretion." **Wang v. Feng**, 888 A.2d 882, 887 (Pa.Super. 2005). An abuse of discretion is not merely an error of judgment. Rather, we will find an abuse of discretion only if "the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record[.]" **Id.**, quoting **Zullo v. Zullo**, 613 A.2d 544, 545 (Pa. 1992). "[Further,], the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." **Lee v. Lee**, 978 A.2d 380, 382 (Pa.Super. 2009) (citation omitted).

"In fashioning an equitable distribution award, the trial court must consider, at a minimum, the [13][1] factors set forth in 23 Pa.C.S.A. § 3502,

---

[1] Since Section 3502 was enacted, the legislature has added two additional factors to be considered when forming an equitable distribution award.

Equitable division of marital property, (a) General Rule." ***Gates v. Gates***, 933 A.2d 102, 105 (Pa.Super. 2007). "We do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions[,] nor do we find a basis for reversal in the court's application of a single factor." ***Lee***, ***supra*** at 383 (citation omitted). Rather, "[i]n determining the propriety of an equitable distribution award, the court must consider the distribution scheme as a whole." ***Wang***, ***supra*** at 887, quoting ***Schenk v. Schenk***, 880 A.2d 633, 643 (Pa.Super. 2004) (examining equitable distribution award as a whole to determine trial court did not abuse its discretion in awarding wife 60% of marital property).

In his first issue, Husband complains the equitable distribution scheme proposed by the special master and accepted by the trial court did not achieve economic justice. (Husband's brief at 21.) Husband claims that according to the relevant factors set out at Section 3502, Husband should have been awarded 50% of the marital assets with Wife receiving the remaining 50%. Instead, Husband was awarded 40% with Wife receiving 60%.

Husband's complaint centers on the weight given to those factors. We observe:

> [T]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors [in the Code] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various

factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Isralsky v. Isralsky*, 824 A.2d 1178, 1191 (Pa.Super. 2003), quoting

*Fonzi v. Fonzi*, 633 A.2d 634, 638 (Pa.Super. 1993) (brackets in the

original).

The record indicates that the special master considered each of the Section 3502 factors.[2] (**See** report, 3/14/12 at 5-12.) The special master then went on to explain her reasoning for the 60/40 split:

> While [Husband] has a slightly lower earning capacity than [Wife], [Wife] has preserved what little marital assets the parties have from being dissipated by paying the marital debts, insurance, the property taxes on the parties' property alone since the parties' separation and contributed more of the assets to the marriage. Specifically, since the marital home was a gift from [Wife's] mother to the couple, it is apparent that [Husband] did not contribute anything to the acquisition of that asset. While [Husband] tried to show that he made significant improvements on the property by introducing numerous photographs as Exhibits, the Special Master determines that she is unable to discern how much of an improvement he contributed since she was not provided with both before and after photographs. Thus, it is the determination of the Special Master that [Husband] did not make any significant contribution to the worth of the marital home. Additionally, as to [Husband's] earning capacity, he has testified that he is "able and available to work," thus, the Special Master determined that he has the ability to find employment to support his monthly expenses.

---

[2] In the interest of brevity, we will not set forth the 13 factors herein, but instead refer to the subsection listing the factors.

*Id.* at 19 (footnote omitted).

Based on the above, the special master placed added weight on the fact that Wife preserved the most significant of the marital assets, *i.e.*, the marital home.

Here, Husband's disagreement with the weight assigned to the statutory factors affords him no relief. In *Gates*, we rejected a similar argument where appellant argued for a reweighing of the factors. We stated: "[I]t is apparent appellant is urging us to simply reweigh the section 3502 factors in the hope the scales will tip in his favor the second time around. We cannot do so in the absence of an abuse of discretion, which appellant has failed to demonstrate." *Gates*, *supra* at 106. *See also Mercatell v. Mercatell*, 854 A.2d 609, 612 (Pa.Super. 2004) (the weight assigned to each of the statutory equitable distribution factors is at the discretion of the trial court).

In the present case, Husband has failed to demonstrate an abuse of discretion in the trial court's application of the Section 3502 factors beyond its failure to assign more weight to certain factors that Husband deems to be in his favor. As such, we cannot reweigh the Section 3502 factors and substitute our judgment for that of the trial court.

In his next issue, Husband takes issue with certain debts that were characterized as marital. He contends those debts were Wife's alone because they occurred after the parties separated. According to Husband,

the debts occurred on September 30, 2009, to Centra Bank for $12,143.22; on October 8, 2009, to PNC Bank, formerly known as National City Bank, for $9,875; and on October 14, 2009, to First Federal Bank for $7,537.24. The total amount of the three debts is $29,555.46. This amount was deducted from the total value of the marital estate ($245,791.05 minus $29,555.46 equals $216,235.59).

Wife testified that the three debts were incurred to purchase the property located at 395 North Gallatin Avenue in 2008 while the parties were married. (**See** notes of testimony, 8/8/11 at 500-505.) Wife testified she continued to make payments on the debt after the parties' separation. (**Id.**) On the above dates, September 30, 2009, October 8, 2009, and October 14, 2009, the balance showing on each bank loan was the amount still owed for the debt. The trial court determined "the debt incurred to purchase the property located at 395 North Gallatin Avenue is tied to ownership of that property, which clearly is a marital asset." (Trial court opinion, 7/2/13 at 3.) Between divorcing parties, debts which accrue to them jointly prior to separation are marital debts. **Litmans v. Litmans**, 673 A.2d 382, 391 (Pa.Super. 1996). Husband's argument that the debts occurred after the parties' separation is not supported by the record. Accordingly, there is no merit to Husband's claim, and we discern no abuse of discretion here.

Husband's next issue concerns his workers' compensation settlement. In early 2009, Husband sustained a back injury at work. (Notes of

testimony, 7/27/11 at 133.) A worker's compensation claim was filed and subsequently settled in early 2011. (*Id.* at 135-136.) Husband was awarded an indemnity settlement of $70,000. After attorney's fees were deducted, Husband was left with $56,000. (*Id.* at 136.) Husband elected to receive annuity payments of $1,145.02 per month for four years. (*Id.*) According to Husband's testimony, he started receiving the payments "two or three months ago." (*Id.* at 136-137.) Those payments were put in an escrow account by court order. (*Id.* at 137.)

Following a hearing on July 15, 2011, Judge Warman entered an order releasing the monthly payments of $1,145.02 over the next four years to Husband. The special master concluded that the settlement of $56,000 was a marital asset and awarded it to Husband. Husband complains the trial court erred by including the entire sum of $56,000 as part of the marital assets, especially in light of the following wording in the court's July 15, 2011 order:

> it is further ORDERED and DIRECTED that the Master in the divorce proceedings will determine if any balance remaining on the workmen's compensation settlement constitutes marital property or is the sole property of the [Husband].

Order, 7/15/11 at 2.

Based on the above, Husband argues the special master should have "backed out" of the equitable distribution award the payments already made to him. According to Husband, there are 18 payments left which total

approximately $21,649.40, and that is the amount that should have been listed as a marital asset rather than the full amount of $56,000. (**See** Husband's brief at 33, 35-36.)

On November 23, 2011, the Pennsylvania Supreme Court decided the case of **Focht v. Focht**, 32 A.3d 668, 674 (Pa. 2011), which held that settlement monies received by husband, post-separation from wife, in his personal injury tort action, were marital property because his cause of action accrued prior to separation. Clearly, Husband's $56,000 settlement is marital property because his work-related injury that gave rise to the settlement occurred before the parties' separated.

Wife counters Husband's argument by asserting that to allow Husband to receive the monthly annuity payments throughout the period of the equitable distribution hearings and appeal would constitute a windfall to Husband; specifically, he would receive a double benefit of having exclusive use of those funds while depleting a marital asset. Wife maintains that to reduce her interest in the funds while Husband has exclusive control of them would be inequitable. We agree, and discern no abuse of discretion in the assignment of this particular marital asset in the amount of $56,000 to Husband.

Next, Husband argues the trial court erred when it failed to award him alimony or expenses. Our standard of review in considering whether the trial court erred in granting or denying alimony is whether the trial court

abused its discretion or committed an error of law. *Gates*, 933 A.2d at 106;

*Polito v. Polito*, 655 A.2d 587 (Pa.Super. 1995). As this court has

explained:

> [T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.
>
> In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

*Gates*, 933 A.2d at 106 (internal citation and quotations omitted) (emphasis

in original).

"The Divorce Code dictates that in determining the nature, amount,

duration and manner of payment of alimony, the court must consider all

relevant factors, including those statutorily prescribed for at 23 Pa.C.S.A.

§ 3701, Alimony, (b) Relevant Factors (1)-(17)." ***Smith v. Smith***, 904 A.2d 15, 20 (Pa.Super. 2006) (internal quotation marks and citation omitted).

In the case ***sub judice***, Husband argues that he should have been awarded some alimony and expenses based on the parties' disparity of employability, income, and assets available. (Husband's brief at 39.) Preliminarily, we observe that a review of the special master's findings reflects that she did consider the relevant factors identified in 23 Pa.C.S.A. § 3701(a).[3] (***See*** report, 3/14/12 at 25-28.) The trial court adopted the special master's recommendation against alimony. The determination that alimony was not warranted was explained by the special master in her report as follows:

> While [Husband] has offered testimony that he is incapable of engaging in meaningful employment and providing for his reasonable needs, he also testified that he held himself out as "able and available" to work in order to receive unemployment compensation benefits. It is the finding of the Special Master that [Husband] chose to receive unemployment compensation benefits to their exhaustion, and is now choosing to receive benefits from his worker's compensation settlement, rather than to seek out and engage in appropriate employment. Based on the foregoing, the Special Master finds that [Husband] is capable of supporting his reasonable needs.
>
> . . . . The Special Master cannot recommend an award of alimony where there is no apparent need upon which to base such a recommendation. There simply was nothing to indicate that the same is

---

[3] In the interest of brevity, we will not set forth the 17 factors herein, but instead refer to the subsection listing the factors.

> necessary. Although [Wife's] income is greater than [Husband's], that factor alone is not determinative. Given that [Husband] is capable of self[-]support through appropriate employment, as well as the fact that [Husband] has received APL for a duration of time roughly half of the duration of the parties' marriage, the Special Master believes that a recommendation of an award of alimony would not be appropriate or just in fact contrary to the Pennnsylvania Divorce Code.

*Id.* at 28-29.

There is sufficient evidence in the record to support the denial of alimony. We find no abuse of discretion on the part of the trial court in adopting the master's determination in this regard.

Last, Husband argues the trial court failed to specifically identify his separate property in Wife's possession and make provisions for him to obtain same. More specifically, Husband refers to his Exhibit 12 which is comprised of five single-spaced, handwritten pages that list personal items, such as, work coats, hunting coats, boots, electric razor, etc.; tools, such as, pipe wrenches, levels, shovels, rakes, sockets, saw, post hole digger, carpet seam iron, etc.; sporting equipment, such as, fishing pole, tackle box and fishing supplies, turkey call, etc.; personal jewelry, such as, wedding ring and watches, and other miscellaneous items. (**See** Exhibit 12.)

In her report, the special master referred to Husband's Exhibit 13 which was a one-page, handwritten list of items bought while the parties were married. The special master awarded all of the items on the list to Husband except for pots and pans that Husband valued at $50. (Report,

3/14/12 at 16.) There was no specific mention of Exhibit 12 in the special master's report. However, Husband points out that later in the special master's report, the master stated: "In addition, each of the parties shall keep any of the property that they each brought into the marriage that has not been deemed marital property by this decree." (*Id.* at 22.)

Our review of the record reveals Wife testified that many of the items on Husband's Exhibit 12 were either bought during the marriage or were junk that Husband picked out of the trash. (Notes of testimony, 8/8/11 at 407-412). This contentious matter has been going on since October 2009. It is now five years later. The items listed by Husband in Exhibit 12 were not valued; however, any value is certainly diminished at this point in time. We find no basis to remand. Accordingly, the order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2014