J-A18037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RODNEY S. SHETTLE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHELLE L. MYERS, | : | |
| | : | |
| Appellant | : | No. 1905 MDA 2014 |

Appeal from the Order entered on October 16, 2014
in the Court of Common Pleas of York County,
Civil Division, No. 2009-FC-1081-15; PACSES No. 258110994

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 07, 2015**

Michelle L. Myers ("Wife") appeals from the Order denying her exceptions to the Master's Supplemental Report and Recommendations.[1] We affirm.

Rodney S. Shettle ("Husband"), born in 1959, and Wife, born in 1967, were married on December 2, 1995, and separated on May 23, 2009.  The

---

[1] It is well settled that an equitable distribution order is interlocutory and not appealable until entry of a divorce decree.  ***See Wilson v. Wilson***, 828 A.2d 376, 377 (Pa. Super. 2003).  Here, Wife filed a Notice of Appeal prior to the entry of a divorce decree.  However, the trial court entered the Divorce Decree on December 24, 2014.  Thus, because the appeal was perfected with the entry of the Divorce Decree, we will review Wife's claims on appeal. ***See*** Pa.R.A.P. 905(a)(5) (stating that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); ***see also Busse v. Busse***, 921 A.2d 1248, 1253 n.2 (Pa. Super. 2007) (stating that even though the divorce decree had not been entered, the appeal was properly before the court because the decree was entered during pendency of appeal).

parties had no children together, but Husband had two adult children from a prior marriage. Husband and Wife are high school graduates with no specialized job training. During the marriage, Husband worked for Mack Truck as an assembler/disassembler, earning $24.56 per hour. Due to health problems caused by work-related injuries, Husband became unable to work and received $670 per week in workers' compensation benefits. Wife primarily worked for UPS as a truck driver, earning $32.65 per hour. Wife also earned minimal income working part-time for Mt. Royal Auction and running a resale business.

Husband filed a Divorce Complaint on June 26, 2009, which included claims for equitable distribution of property, APL, counsel fees, costs, and expenses. By court Order, Wife was directed to pay Husband monthly APL of $97.88. On July 31, 2013, after a hearing, the Master filed a Report and Recommendation that Husband receive 59% of the marital property. Both Husband and Wife filed Exceptions to the Recommendation.

The trial court subsequently remanded the matter for a hearing, addressing only Husband's future earning capacity. The hearing was conducted before the Master on April 25, 2014. At the hearing, Husband testified to his extensive physical ailments. On April 28, 2014, the Master filed a Supplemental Report and Recommendation, finding that Husband's earning capacity decreased and was equal to his workers' compensation benefit. The Master made no other changes to the Report and

Recommendation. In the interim, Husband petitioned for an increase in APL, and on May 7, 2014, after a *de novo* hearing, the Master granted Husband an increase of APL to $225.00 per month. Wife filed timely Exceptions to the Supplemental Report and Recommendation, which the trial court denied. Thereafter, Wife filed a Notice of Appeal.

On appeal, Wife raises the following questions for our review:

A. Is the distribution percentage awarded to Husband inequitable and not supported by appropriate consideration of the factors in section 3502 of the Divorce Code?

B. Did the [trial c]ourt err in not giving proper weight to Wife's greater contribution to the marital estate, in giving excessive weight to Husband's lower actual earnings, in failing to properly evaluate Husband's earning capacity, in reducing Husband's earning capacity, in failing to properly consider Husband's larger separate estate, likely inheritance, and two prior marriages, and in excluding certain credit card debt assumed by Wife?

C. Did the [trial c]ourt err in awarding an increase in [APL] because Husband failed to prove that his earning capacity had changed, offered no evidence demonstrating a need for an increase, and failed to prove his case at the de novo hearing?

Brief for Appellant at 2.

In reviewing an equitable distribution award, this Court's standard of review is as follows:

The trial court has broad discretion in fashioning such awards, and we will overturn an award only for an abuse of that discretion. To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure. Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

- 3 -

Our Supreme Court has described an abuse of discretion as "[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abuse." In determining the propriety of an equitable distribution award, the court must consider the distribution scheme as a whole.

*Wang v. Feng*, 888 A.2d 882, 887 (Pa. Super. 2005) (citations omitted).

Further, "a [M]aster's [R]eport and [R]ecommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the [M]aster has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003).

Factors relevant in the distribution of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance, or other benefits.

(7) The contributions or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution as a homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a). "These factors require the trial court to consider the relative economic positions of the parties and the nature of the parties' relationship." *Gates v. Gates*, 933 A.2d 102, 105 (Pa. Super. 2007). "The section 3502 factors are not a simple formula, rather they serve as a guideline for consideration." *Id.* "The facts of a particular case mandate how the section 3502 factors will be applied." *Id.* Further, our Court cannot reweigh the section 3502 factors in the absence of an abuse of discretion by the trial court. *Id.* at 106.

We will address Wife's first two claims together. Wife argues that the distribution of 59% of the marital assets to Husband was inequitable and not supported by the factors in section 3502. Brief for Appellant at 9. Wife claims that the evidence does not support a finding that Husband would

need a larger portion to recover financially from the divorce.  *Id.* at 10-11; *see also id.* at 11 (arguing that the Master gave excessive weight to Husband's lower earnings and reduced earning capacity).  Wife asserts that the Master gave no weight to the fact that Wife contributed more to the marital estate, and the case law supports giving Wife a greater share of the marital estate because of her greater contribution.  *Id.* at 12, 15-16.  Wife further asserts that Husband's earning capacity is equal to her earning capacity.  *Id.* at 19-20.  Wife also contends that the trial court erred because the Master did not give proper weight to Husband's separate estate, Wife's credit card debt, and Husband's prior marriages.  *Id.* at 20-24.

Our review of the record discloses that Husband testified that he has undergone multiple surgeries, including two carpal tunnel surgeries on his wrists and thirteen knee surgeries.  N.T., 4/25/14, at 4, 11.  Because of the problems with his hands, Husband stated, he drops things, cannot pick up anything small objects, and cannot write or use a computer.  *Id.* at 10, 13-14.  Husband also testified that he has two herniated disks in his back and neck that will require surgery in the future.  *Id.* at 12-13.  Husband testified that after receiving physical therapy, the doctors believed there was nothing else that they could do for him.  *Id.* at 10.  After his last knee surgery, Husband stated, he returned to work, but that he now has many restrictions.  *Id.* at 6.  According to Husband, he was to work for only fifteen minutes at a time, and then he would have to take a break until his hands stopped

hurting. *Id.* at 8. Husband was not allowed to lift more than thirty pounds, squat, bend, or be on his feet for more than two hours a day. *Id.* Husband is on four different medications for pain that he takes every day. *Id.* at 11.

Based upon this evidence, the Master found that even though the parties had the same educational background and training, Husband had a lower earning capacity than Wife due to his health problems and age. Trial Court Opinion, 10/16/14, at 7. The Master specifically determined that Husband's earnings would only be equal to his workers' compensation benefits. *Id.* The Master further found that Husband's non-marital estate is approximately $120,000 with Wife's estate being approximately $79,000. Master's Report and Recommendation, 7/21/13, at 32; *see also* Trial Court Opinion, 10/16/14, at 8.[2] In reviewing these findings, the Master additionally considered Husband's prior divorces and child support as factors. Master's Report and Recommendation, 7/31/13, at 21-22; *see also* Trial Court Opinion, 10/16/14, at 10. The Master also considered the marital credit card debt accumulated by Wife, but determined that it would be unfair to give Wife credit for that debt based on Wife's inability to ascertain which cards she had failed to maintain payments. *Id.* While the Master considered Wife's greater contribution to the marital estate, the Master

---

[2] The Master did not include Wife's Teamsters/UPS Tax Deferred Savings Plan/401(k) Plan because Wife did not provide the value of the plan. The trial court determined that the plan would most likely add value to Wife's estate. *See* Master's Report and Recommendation, 7/31/13, at 32; *see also* Trial Court Opinion, 10/16/14, at 8-9.

ultimately determined that, given Wife's superior earnings and a longer remaining work life, and Husband's poor health, age, and inability to work, her estate will most likely catch up or even surpass the value of Husband's estate. *Id.* at 6, 8. Based upon the evidence of record and the trial court's consideration of the section 3502 factors, we discern no abuse of discretion in awarding a distribution of 59% to Husband. *See Gates*, 902 A.2d at 106 (stating that our Court cannot reweigh the section 3502 factors in the absence of an abuse of discretion).[3]

In her third claim, Wife argues that the trial court erred in increasing the APL because there was no medical evidence to support the determination that Husband's earning capacity has been reduced, and that his earning capacity is equal to his workers' compensation benefit. Brief for Appellant at 24, 27.

---

[3] Wife cites to *Mercatell v. Mercatell*, 854 A.2d 609 (Pa. Super. 2004), to support her claim that she is entitled to a higher percentage of the marital assets. Brief for Appellant at 13-14. In *Mercatell*, the Superior Court upheld an equitable distribution of 60% of marital assets to Wife because Wife had contributed more to the marital estate, and husband was voluntarily underemployed. *Mercatell*, 854 A.2d at 611-12. Contrary to *Mercatell*, Husband was not voluntarily underemployed, and the trial court found that his lower contribution to the marital estate was not any fault of his own. *See* Trial Court Opinion, 10/16/14, at 5. Moreover, Wife's citation to two Court of Common Pleas cases to support her contention does not provide her relief, as Court of Common Pleas cases are not binding authority on this Court. *See Hirsch v. EPL Techs, Inc.* 910 A.2d 84, 89 n.6 (Pa. Super. 2006) (stating that decisions of the Court of Common Pleas are not binding precedent).

"[T]he determination of the amount to be awarded, whether of alimony or [APL], rests in the sound discretion of the trial court. Absent an abuse of that discretion, an appellate court will not disturb the trial court's award." ***Spink v. Spink***, 619 A.2d 277, 278 (Pa. Super. 1992).

As noted above, Husband testified that his health problems prevented him from being able to do his job. ***See*** N.T., 4/25/14, at 6, 8. The Master found Husband's testimony to be credible and that, due to his injuries, he would have no additional income other than his worker's compensation benefits. ***See*** Trial Court Opinion, 10/16/14, at 18; ***see also Moran***, 839 A.2d at 1095 (stating that full consideration is given to the Master's report on the credibility of witnesses because the Master can assess the behavior and demeanor of the parties). The Master had the discretion to accept Husband's claim for diminished earning capacity, even without medical evidence. ***See Moran***, 839 A.2d at 1095. The record supports the increased award of APL to Husband based on his reduced earning capacity, and the trial court did not abuse its discretion.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2015

- 9 -