**Deborah G. BAKER, Appellee,**

v.

**Bradford P. BAKER, Appellant.**

Superior Court of Pennsylvania.

Submitted July 6, 2004.
Filed Oct. 26, 2004.

Craig P. Miller, Lock Haven, for appellant.

Michael F. Salisbury, Lock Haven, for appellee.

BEFORE: KLEIN, GANTMAN, and TAMILIA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Bradford P. Baker ("Husband"), asks us to determine whether the Clinton County Court of Common Pleas erred in its order directing equitable distribution of the parties' marital assets and awarding alimony to Appellee, Deborah G. Baker ("Wife"). Specifically, Husband challenges the court's decision regarding the value of his veterinary practice, his equity interest in the practice, and its award of temporary alimony to Wife. We hold the court properly valued the veterinary practice and Husband's equity interest. We further hold the court properly awarded temporary alimony to Wife. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Husband and Wife married on June 22, 1989. They separated on November 30, 2000. The court entered a divorce decree on January 27, 2003. Hearings on the economic issues between the parties occurred in the Clinton County Court of Common Pleas before the Honorable Richard N. Saxton, President Judge, on September 26, 2003 and October 7, 2003.

¶ 3 The record reveals this marriage was the first for both parties. The parties have no children. Husband is 45 years of age. Wife is 42 years of age. Husband is a doctor of veterinary medicine. Wife has a bachelor's degree in biology and chemistry, but is currently unemployed. Wife financially supported Husband while he attended veterinary school at Kansas State University from 1989 to 1993. During those years, Wife earned approximately $60,000.00 per year boarding and training horses on a farm in Salina, Kansas. During Husband's first two years in veterinary school, Wife contributed approximately $15,000.00 per year to his financial support. During his last two years, she contributed approximately $10,000.00 per year.

¶ 4 The parties returned to Pennsylvania after Husband's graduation. They purchased a marital residence in May 1996. Husband worked part-time for a veterinary clinic. Wife worked for several feed

supply companies. Husband purchased an established veterinary practice in May 2000 for $250,000.00. He purchased the practice from the estate of a veterinarian who had operated it at the same location under a different name for the previous ten to fifteen years. Wife lost her job in April 2003. She is now studying to obtain a real estate sales license. She plans to enroll in an animal science Ph.D. program at the Pennsylvania State University as well.

¶ 5 Wife's business valuation expert witness, David Bohlander, testified to the fair market value of Husband's sole proprietorship veterinary practice. Mr. Bohlander valued Husband's equity interest in the practice at $99,000.00 as of December 31, 2002. He testified that a portion of Husband's equity interest took the form of enterprise goodwill which included the location of the practice and the customer list. Mr. Bohlander testified Husband's annual income from the practice was $74,100.00. Husband did not offer expert opinion testimony regarding the fair market value of his practice, his equity interest therein, or his income. He did not submit a written income and expense statement. He testified that his accounting methods included the commingling of business expenses and personal expenses. Husband purchased a used boat, a new motorcycle, and a new SUV since the parties' separation. He has paid Wife $500.00 per month during that period.

¶ 6 The court entered an order equitably distributing the marital assets, 65% to Wife and 35% to Husband. The court awarded Wife $400.00 per month alimony for three years. Husband was permitted to keep the practice and Wife was permitted to keep the marital residence. The order specifically provided:

**ORDER**

IT IS HEREBY ORDERED that the marital assets shall be divided in the following manner:

| WIFE | |
|---|---|
| Equity in the marital home | $ 28,524.63 |
| Horse named "Kat" | $ 7,500.00 |
| Money already paid by Husband to Wife from June, 2001, to November 2003 | $ 15,000.00 |
| Lump Sum from Husband to Wife to be paid within 90 days of the date of this Order | $ 65,145.23 |
| TOTAL—65% of the marital assets | $116,169.86 |
| **HUSBAND** | |
| Baker's Veterinary Clinic | $ 99,000.00 |
| 1995 Honda Del Sol | $ 5,550.00 |
| 1991 Mitsubishi Montero ($3,850.00 less lien $3,184.16) | $ 665.84 |
| M & T Certificate of Deposit Acct. # 150042001616492 | $ 16,284.46 |
| Fidelity preferred Services Acct. # 0521575866 | $ 2,306.62 |
| MFS Account | $ 18,891.31 |
| Subtotal | $142,698.23 |
| Less $15,000.00 already Paid to Wife | –$ 15,000.00 |
| Less lump sum payment to wife | –$ 65,145.23 |
| Total—35% of the marital assets | $ 62,553.00 |

**ALIMONY**

Husband shall pay Alimony to Wife in the amount of $400.00 a month for three years to enable her to provide for her reasonable needs.

**COUNSEL FEES**

Husband shall pay Wife's counsel fees to Michael F. Salisbury in the amount of $4,080.00 within a reasonable time.

(Trial Court Order, 1/12/04).

¶ 7 Husband filed a timely notice of appeal. He timely complied with the court's directive to file a concise statement of matters complained of on appeal.

¶ 8 Husband raises three issues for our review:

DID THE LOWER COURT ABUSE ITS DISCRETION IN ESTABLISHING A VALUE FOR "GOOD WILL" OF HUSBAND'S VETERINARY PRACTICE?

DID THE LOWER COURT ABUSE ITS DISCRETION IN AWARDING ALIMONY TO WIFE?

DID THE LOWER COURT ABUSE ITS DISCRETION IN DETERMINING THAT HUSBAND'S VETERINARY PRACTICE HAD A NET EQUITY OF $99,000.00?

(Husband's Brief at 5).

¶ 9 "Our review of an equitable distribution order is limited as such

awards are within the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion." *Anderson v. Anderson,* 822 A.2d 824, 827 (Pa.Super.2003). "An abuse of discretion will be found only if the trial court failed to follow proper legal procedures or misapplied the law." *Id.* (citing *Fishman v. Fishman,* 805 A.2d 576, 578 (Pa.Super.2002)).

¶ 10 For disposition purposes, we will address Husband's first and third issues together. Husband maintains that any goodwill value inuring to his sole proprietorship practice is personal goodwill and therefore, not subject to equitable distribution. He additionally claims the court improperly accepted Wife's expert's net equity figure, in part, because it included a goodwill value. Further, Husband claims Wife's valuation expert improperly inflated the value of the veterinary real estate. Husband also claims any increase in value of the practice inured post-separation and is not subject to equitable distribution. Thus, Husband concludes the court's order of equitable distribution was in error. We disagree.

▬▬ ¶ 11 In determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382, 395 (1996) (citing *Aletto v. Aletto,* 371 Pa.Super. 230, 537 A.2d 1383 (1988)). "Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented." *Id.* (quoting *Holland v. Holland,* 403 Pa.Super. 116, 588 A.2d 58, 60 (1991)), *appeal denied,* 528 Pa. 611, 596 A.2d 158 (1991). *Accord Smith v. Smith,* 439 Pa.Super. 283, 653 A.2d 1259, 1267 (1995), *appeal denied,* 541 Pa. 641, 663 A.2d 693 (1995) (stating if one party dis-

agrees with the other party's valuation, it is his burden to provide the court with an alternative valuation). A trial court does not abuse its discretion in adopting the only valuation submitted by the parties. *Litmans, supra* at 395. Absent a specific guideline in the divorce code, the trial courts are given discretion to choose the date of valuation of marital property which best provides for "economic justice" between parties. *Smith, supra* at 1270.

▬▬ ¶ 12 "[G]oodwill is essentially the positive reputation that a particular business enjoys." *Butler v. Butler,* 541 Pa. 364, 378, 663 A.2d 148, 155 (1995). Goodwill "is the favor which the management of a business has won from the public, and probability that old customers will continue their patronage." *Id.* (quoting *Buckl v. Buckl,* 373 Pa.Super. 521, 542 A.2d 65, 69 (1988)). "[G]oodwill value which intrinsically ties to the attributes and skills of certain individuals is not subject to equitable distribution because the value thereof does not survive the disassociation of those individuals from the business." *Id.* (citing *Solomon v. Solomon,* 531 Pa. 113, 124–25, 611 A.2d 686, 692 (1992)). Conversely, "goodwill which is wholly attributable to the business itself is subject to equitable distribution." *Id.*

▬▬ ¶ 13 Instantly, Husband did not produce expert witness testimony regarding valuation of his veterinary practice. The court noted Husband did not submit a written income and expense statement. (Trial Court Opinion, filed January 12, 2004, at 8). Although Husband's counsel cross-examined Wife's expert, Wife's expert's testimony regarding the value of Husband's practice and income was essentially uncontradicted. Indeed, a portion of the expert's testimony was corroborated by Husband who admitted he commingled business and personal expenses in his business accounting. We conclude the court

did not abuse its discretion in accepting the uncontradicted valuations offered by Wife's expert witness. *Litmans, supra; Smith, supra; Holland, supra; Aletto, supra.*

¶ 14 Further, Wife's expert testified the goodwill he attributed to the value of the practice was not based on personal characteristics of Husband. Rather the goodwill value the expert attributed to the practice was based on criteria such as location and customer lists. This aspect of the practice's goodwill was properly subject to equitable distribution. *Butler, supra; Solomon, supra; Buckl, supra.* Additionally, the court did not abuse its discretion in accepting the testimony valuing the practice as of December 31, 2002. *Smith, supra.*

¶ 15 Husband next alleges the court erred in awarding alimony to Wife. Husband contends that alimony is unwarranted because Wife did not contribute significantly to Husband's education; Wife provided no proof of her alleged contributions; the parties were separated for a portion of the time Husband attended veterinary school; Wife benefited from Husband's degree from 1994 to 2000; Wife "jettisoned" Husband; and there are sufficient marital assets available to Wife. (Husband's Brief at 21). We disagree.

¶ 16 "Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion." *Teodorski v. Teodorski,* 2004 PA Super 313 ¶ 16, 857 A.2d 194 (2004). Pennsylvania's alimony statute, 23 Pa.C.S.A. § 3701, is intended to provide for economic justice according to actual needs and the ability of the parties to pay. *Geyer v. Geyer,* 310 Pa.Super. 456, 456 A.2d 1025 (1983). The statute must be applied in a non-mechanical manner so that a reasonable and compassionate result may be reached in each case. *Id.* Relevant factors in the determination of whether alimony is necessary include:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14)The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall

have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b)(1)-(17).

¶ 17 Instantly, the court considered each of the 17 statutory factors enumerated above. (*See* Trial Court Opinion at 6–9). Significant to the court's decision to award alimony were the length of the marriage; Wife's financial support to Husband during veterinary school; and Wife's current unemployment. With respect to factor (6) above, the court found as follows:

> Wife made significant contributions to the education and increased earning power of Husband. While Husband was at veterinary school, she operated a training and boarding facility for horses and worked approximately seventy hours per week. She assumed responsibility for paying all the bills. Furthermore, each year she sold a horse so that Husband could use the money toward his education. Husband's testimony that he paid for veterinary school education solely with student loans is incredible.

(*Id.* at 6–7).

¶ 18 In view of the circumstances surrounding Wife's situation, the trial court fashioned Wife's alimony award in a non-mechanical manner to reach a reasonable and compassionate result in this case. Therefore, in light of the evidence adduced at trial and the relevant scope and stan-

dard of review, we see no error in the trial court's decision regarding Wife's alimony needs. *Teodorski, supra; Geyer, supra;* 23 Pa.C.S.A. § 3701.

¶ 19 Based on the foregoing, we hold the court properly valued Husband's veterinary practice and equity interest. We further hold the court properly awarded temporary alimony to Wife. Accordingly, we affirm the order of equitable distribution and award of alimony.

¶ 20 Order affirmed.